[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 21, 2006
THOMAS K. KAHN
CLERK

No. 06-10769
Non-Argument Calendar
_____

D. C. Docket No. 05-00332-CR-T-24-MSS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FEDERMAN MADERA-LOPEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(July 21, 2006)**

Before CARNES, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Federman Madera-Lopez appeals his convictions and 168-month concurrent

sentences, imposed after he pled guilty to conspiracy to possess and possession

with intent to distribute five or more kilograms of cocaine, a violation of 21 U.S.C. § 960 and the Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.C. §§ 1903(a), (g), and (j), respectively. He argues that the district court did not have jurisdiction because Congress exceeded its constitutional authority by enacting the MDLEA and that the MDLEA is unconstitutional because it removes the jurisdictional element from the jury's consideration. For the reasons set forth more fully below, we affirm.

In open court before a magistrate judge, Madera-Lopez admitted to the following facts: on or about August 3, 2005, Madera-Lopez and three other defendants, while aboard a go-fast vessel "subject to the jurisdiction of the United States," possessed with the intent to distribute and aided and abetted with each other to distribute in excess of five kilograms of cocaine. A United States Coast Guard cutter intercepted and disabled the defendants' boat with warning shots and disabling fire, and, after boarding the boat, the Coast Guard seized over 21 bales containing over 525 kilograms of cocaine. The district court adopted the magistrate's recommendation that Madera-Lopez's plea be accepted. Later, the court sentenced Madera-Lopez to 168 months' imprisonment. At no point during the proceedings did Madera-Lopez object to the district court's jurisdiction.

As a preliminary matter, the government argues that because Madera-Lopez

pled guilty unconditionally, he waived all non-jurisdictional challenges to his conviction, preventing this Court from hearing his constitutional challenge. The government acknowledges that we have never decided whether a guilty plea forfeits a defendant's right to challenge Congress's authority to enact the statute to which he pled guilty, and, while suggesting that our precedent might be read as rendering Madera-Lopez's claim non-jurisdictional, concedes that the claim also might be construed as a jurisdictional one. Madera-Lopez argues that, despite failing to challenge jurisdiction in the district court, we should review whether the district court had jurisdiction de novo because the question of subject matter jurisdiction can never be waived, and plain error review does not apply to jurisdictional challenges, which can be raised at any point during the proceedings.

We review questions of subject matter jurisdiction de novo. United States v. Petrie, 302 F.3d 1280, 1284 (11th Cir. 2002). "A defendant's unconditional plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all non-jurisdictional defects in that defendant's court proceedings." United States v. Pierre, 120 F.3d 1153, 1155 (11th Cir. 1997) (quotation, brackets, and citation omitted). Id. We further have held, however, that even when a defendant pleads guilty, a jurisdictional exception exists for "cases in which the accused is challenging the constitutionality of the statute, usually on Fifth

3

Amendment grounds, under which he is charged." United States v. Sepe, 474 F.2d 784, 788 (5th Cir. 1973).

The government suggests that Madera-Lopez's argument regarding Congressional authority might be viewed as non-jurisdictional, but we conclude that his claims are jurisdictional in nature because, if he is successful, the MDLEA would be rendered void. Id. However, because Madera-Lopez failed to raise his jurisdictional argument below, we will review for plain error only. See United States v. Williams, 121 F.3d 615, 618 (11th Cir. 1997) (reviewing for plain error a defendant's claim, raised for the first time on appeal, that Congress exceeded its authority under the Commerce Clause and the Tenth Amendment in enacting the Child Support Enforcement Act, noting that there was "no plainer error than to allow a conviction to stand under a statute which Congress was without power to enact."); United States v. Walker, 59 F.3d 1196, 1198 (11th Cir. 1995) (rejecting the government's argument that a defendant waived his right to challenge the constitutionality of 18 U.S.C. § 922(g)(1)(A) by failing to object in the district court).

"To establish plain error, a defendant must show there is (1) error, (2) that is plain, and (3) that affects substantial rights." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2006). "If all three conditions are met, we may exercise our

discretion to recognize a forfeited error, but only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Id. "When neither the Supreme Court nor this Court has resolved an issue, and other circuits are split on it, there can be no plain error in regard to that issue." Id.

## I. Congress's Power to Enact the MDLEA

Madera-Lopez first argues that the MDLEA is unconstitutional because Congress's Article I powers "do not encompass the authority to punish drug trafficking among stateless vessels on the high seas." Specifically, Madera-Lopez argues that Congress's sole authority for legislating extra-territorially is the "Piracies and Felonies Clause," set forth in Article I, section 8, clause 10 of the Constitution. He argues that this Clause granted Congress power to regulate three distinct things—piracies, felonies, and "offenses against the laws of nations"—and the MDLEA is an improper attempt to regulate a felony which bears no relation to the United States. Next, Madera-Lopez argues that the felony and piracy powers of Congress serve different purposes, and the piracy clause cannot be invoked to grant Congress "universal jurisdiction" over all offenses if those offenses were not considered "piracy" when the Constitution was written. Furthermore, he contends that the "felony" clause serves narrow purposes and should not be read to extend Congress's power to include punishment for offenses, such as the one in the instant

case, committed by foreigners on foreign vessels. Madera-Lopez also argues that Congress's power to punish offenses against the law of nations has no extra-territorial scope, and drug crimes do not fall under the umbrella of "universal jurisdiction." Finally, Madera-Lopez argues that the legislative history of the MDLEA demonstrates that Congress did not believe that a resort to "universal jurisdiction" was necessary when it enacted the MDLEA. Thus, Madera-Lopez concludes that Article I of the Constitution did not grant Congress authority to punish drug activity committed in foreign waters by foreign nationals on a foreign vessel.

As noted above, we review for plain error because Madera-Lopez did not object to the MDLEA's application in the district court. The "Piracies and Felonies Clause" grants Congress the power "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offenses against the Law of Nations." U.S. Const., Art. I, sec. 8, cl. 10. The MDLEA provides, in relevant part, that "[i]t is unlawful for any person . . . on board a vessel subject to the jurisdiction of the United States . . . to possess with intent to manufacture or distribute, a controlled substance." 46 U.S.C.App. § 1903(a). A "vessel subject to the jurisdiction of the United States" includes "a vessel without nationality," which, in turn, is defined to include "a vessel aboard which the master or person in charge makes a claim of

6

registry and the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." 46 U.S.C.App. § 1903(c)(1)(A) and (c)(2)(C). However, there is no precedent from either the Supreme Court or this Court resolving the issue of whether the MDLEA's enactment exceeded Congress's authority under the "Piracies and Felonies Clause."[1] Therefore any alleged error the district court may have committed was not plain. Cf. United States v. Urena, 140 Fed.Appx. 879, 881-82 (11th Cir.), cert. denied 126 S.Ct. 771 (2005) (unpublished) (holding that the district court did not commit plain error by failing to sua sponte dismiss a case because Congress did not have the authority under the Piracies and Felonies Clause to enact the MDLEA).

The two Supreme Court cases Madera-Lopez relies upon do not alter the result. In United States v. Smith, 18 U.S. 153, 5 Wheat. 153, 5 L.Ed. 57 (1820), the Supreme Court addressed an act of Congress that defined piracy by reference to the "law of nations." Id. at 157. The Court declared that "piracy, by law of

---

[1] The Ninth Circuit has held that the MDLEA was a constitutional exercise of Congressional power, although it did not discuss the limits of Congress's authority under the Piracies and Felonies Clause. See United States v. Moreno-Morillo, 334 F.3d 819, 824 (9th Cir. 2003). The Third Circuit also has held that Congress has the authority under that clause to criminalize drug trafficking on the high seas, regardless of whether a nexus to the United States existed. United States v. Martinez-Hidalgo, 993 F.2d 1052, 1056 (3rd Cir.1993). Similarly, we have rejected the argument that the MDLEA is unconstitutional because the conduct at issue lacks a nexus to the United States. United States v. Rendon, 354 F.3d 1320, 1325 (11th Cir.2003).

7

nations, is robbery upon the sea, and that it is sufficiently and constitutionally defined by the fifth section of the act of 1819." Id. at 162. Even if Smith, as Madera-Lopez suggests, stands for the proposition that the Piracies and Felonies Clause creates distinct grants of power for defining and punishing piracy and felonies, it does not impact the result in this case.

The other case cited is United States v. Furlong, 18 U.S. 184, 5 Wheat. 184, 5 L.Ed. 64 (1820). Simply put, Furlong did not involve an interpretation of the Piracies and Felonies Clause, but rather an act of 1790 criminalizing piratical murder, and it certainly did not hold that Congress exceeded its authority under the Pirates and Felonies Clause by seeking to regulate drug trafficking on the high seas. See generally id. Accordingly, we conclude that the district did not plainly err because neither the Supreme Court nor any circuit court has ever declared the MDLEA an unconstitutional exercise of congressional power.

## II. The MDLEA's Jurisdictional Element

Madera-Lopez argues that the MDLEA unconstitutionally removes the jurisdictional element of the crime from the jury's consideration, in violation of the Supreme Court's ruling in United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), that every element of an offense must be submitted to a jury for proof beyond a reasonable doubt. Madera-Lopez concedes that this

8

Court's precedent forecloses this argument, but wishes to raise the issue for purposes of en banc or certiorari review.

In Gaudin, the Supreme Court stated that "[t]he Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." Gaudin, 515 U.S. at 522-23, 115 S.Ct. at 2320. The MDLEA, however, specifically provides that: "Jurisdiction of the United States with respect to vessels subject to this chapter is not an element of any offense. All jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C.App. § 1903(f).

First, Madera-Lopez waived his right to have the jury make any findings whatsoever. Pierre, 120 F.3d at 1155; cf. Ureda, 142 Fed.Appx. at 882. In any event, even if the issue was not waived, we have squarely rejected his Gaudin argument by holding that the MDLEA's jurisdictional requirements are not elements of the offense, and, therefore, do not have to be proven to a jury. See United States v. Tinoco, 304 F.3d 1088, 1111-12 (11th Cir. 2002). We, therefore, affirm.

**AFFIRMED.**